Good morning. May it please the Court, Robert James Monsignori, appearing for Appellant Objectors, Anthony Gineska, Jeffrey Craig, Nina Ashkenaz Edwards, Gloria Comeau, and Rosemary Ciccone. Our argument will be divided into three. Paul Yeske and John Crabtree will follow. We'll do our best to reserve seven minutes of rebuttal time, keeping our eye on the clock. Counsel, we've been receiving word Friday of settlement. Can you explain who's settling and what's happening? Yes, Your Honor. To be candid, there is a cottage industry of professional objectors. All of them have settled. The lawyers remaining in the case, it is my understanding, have never objected to a class action settlement before. But there are people still left. I mean, not everybody's gone away. No, my clients, I have Anthony Gineska from Massachusetts, Jeffrey Craig from New Hampshire, Nina Edwards is from Missouri, Gloria Comeau from Nevada, and Rosemary Ciccone is from Rhode Island. So they're all from repealed states? The admitted repealer states are Massachusetts, which is Gineska, New Hampshire, which is Craig, and Missouri, which is Edwards. And the other two are from non-repealer states? The non-repealer states are covered by Gloria Comeau from Nevada. Okay. All right. All right. Please proceed. My argument will focus on errors of law committed by the district court that compel this appellate board to reverse and remand. If time permits, there's one abuse of discretion that I'd like to possibly have the court look at because of the importance in jurisprudence and to provide future guidance to district courts. That addresses the omission from the record of evidence that went to the linchpin of this decision, if we have time. The law is clear on several contextual points. A district court may not waive Rule 23A-4 due process in substituting a Rule 23E adequacy, sorry, fairness of settlement analysis. It just can't be done. That law is found in Ortiz. It's found in Molsky, which is a Ninth Circuit case and another case with very precise languages of payment cards. The second principle of law is that an approval of a settlement class is subject to heightened scrutiny. That's in Amken once again. The third point is that it is the duty of the moving party under Rule 23A-4 to establish its burden. The burden cannot be shifted to the objector under 23A-4. Under 23E, yes. The fourth point is appellate review of certification under Rule 23A must be established without dependence to the settlement terms. The settlement terms can be looked at generally under 23E. It can be looked at more specifically, but under 23A, the finding of adequacy of representation cannot be based on the terms of the settlement. All right. So what if we were to agree with you? What would happen? What would happen if it's remanded? It would be reversed because the court applied the wrong legal standard in determining adequacy. It would go back and the issues, all the issues would be briefed. The litigation would commence and the people who were omitted and denied their due process rights would receive their day in court. I would refer the court. I have, anticipating the questions of the court, I have the home-run cases. The one at bat is the one that hits your point directly, and this is actually a grand slam. On third base leading off was AMCAM. That's the seminal decision of the United States Supreme Court rejecting a settlement class certification based on lack of adequate representation. It also established the notion that structural protections such as subclassing are necessary under certain circumstances to ensure due process. That's found at 521 U.S. 591, and that is a 1997 case. Ortiz is on second, 527 U.S. 815, 1999 case. That's another seminal United States Supreme Court decision case that applies a heightened scrutiny standard to settlement class certification. It held that fairness of settlement cannot substitute for presence of Rule 23A review. Judge Wardle, I was posing the question, what happens? You talk about it going back. I want to ask the same question maybe in a slightly different way, which is that is there any reason to anticipate anything other than the district court reciting the words it's supposed to recite in order to check off that box? If you look at the district court's decision, it, in fact, talks about conflict of interest, which seems to me to be the key factor behind the adequacy of representation issue. And so I don't quarrel with the proposition that the district court has used different words to get around this concern, but I'm not sure that substantively the court hasn't already answered the question for its purposes. Why shouldn't we just look to that? That's exactly what happens in Community Bank, which is a Third Circuit case. It exactly happened like that. The facts mirror almost identically. Actually, the theories of law almost mirror exactly the cases here. What would happen if the district court had carried out its 23A4 review on adequacy would be that it would find that the named class representatives, which, by the way, in this case weren't named, were not adequate representatives. And beyond that, class counsel did not vigorously pursue this case and did not vigorously pursue them. The question that would be asked by the court is three of them. Are the interests aligned? Number two, are the interests of the class representatives and the class members in conflict? The third question the court would ask and have to answer under a 23A review, which was never carried out, it was never carried out here, and I'll read the language from the opinion after I raise this last point. The third question would be, have the class representatives and class counsel vigorously prosecuted the class members' claims? This is the individual class members, not as a whole, not the general bulk of work that was thrown at this appellate body in the response of brief. But what did they do for Massachusetts class members? What did they do for New Hampshire class members? What did they do for Missouri class members? In this particular case, the court would find it would first of all have to identify who the class representatives were that represented Massachusetts, New Hampshire, and Missouri. There's none named. None had aligned interests. It didn't identify who they were. These representatives did not hold the same claims as the Massachusetts class members, the New Hampshire class members, or the Missouri class members. All the other repealer states had their own class representatives. They fought. They got to recover. Here they did not. So it's not just the fact, however, that they had an economic recovery. They had people and zealously represented them in protecting their interests. Now, how do we know that? Well, who's the they in the question you asked? They're not named in the opinion. I said they had somebody vigorously representing them, and I'm lost in who the they is in this sentence. I mean, are you talking about the people from the, what is it, 22 states? Yes. And so you're distinguishing that group from your clients in the three states plus the, I guess, potentially the non-repealer states as well. Yes, I'm focusing on the omitted repealer states of Massachusetts, New Hampshire, and Missouri. They did not have a class representative named. There is absolutely no law that allows that to occur. Well, in fact, the rule explicitly says you have to have a class representative, and all the case law that interprets it says you need to have a class representative that advocates for your rights. Here, they didn't. They didn't assert claims. That in itself is a conflict. Well, are those claims different from the other repealer states? Absolutely not. The only thing different is that with the other repealer states, lead counsel prosecuted them. The appellees have tried to turn the burden on its head. It is not the burden of the absent class members to come forward and put someone in the case. That is clearly the duty of lead counsel, and that's found in the wording of the law, of the rule, rather, and it's found in every case that's ever interpreted this. What should lead counsel have done? There's lots of cases that cite, and in fact, the order appointing lead counsel said that he is to represent their interests. So there's a case in New York where lead counsel went out and contacted a number of potential class reps by solicitation, and he was ethically charged, and they said no. It's his duty to do that. In this particular case, we can just break it right down to what could he have done. He shouldn't have dismissed Gineska, which was the first class representative. He just dumped them. There's not one letter, not one communication, there's not one scintilla of evidence anywhere on the record that he notified Mr. Gineska that he was discharging him. So number one, he could have called up Mr. Gineska and asked him, do you have receipts? I guess he never said what this big process is that he used to vet, but one thing is, do you have receipts, Mr. Gineska? No. Does anyone in your family have receipts? No. Does anyone in your friends? Well, I'm sure as you go along, someone will have a receipt to a TV. The opinion cited that there are millions of people who were part of this class. Everyone who bought a TV during the expansive class period is a potential class rep. There's lawyers in the case. How many law firms in this case? Do they have existing clients? There's other cases where people have run ads. There's a lot of different ways that lead counsel should have done what he had to do under the rule of law, under his appointment. The rule of law says he has a duty to represent these people. He can't wait until after the fact, include them in his class, and then have satisfied Amchem or Tees or any of the other Ninth Circuit cases. Time is limited, so let me jump to what I think to be the big problem for me at least. And I'm surprised that there's not more case law on it. But I've looked in our circuit's case law and don't see very much with regard to what I think is the core problem here, which is there's some people who get money and some people who don't. And the same attorneys purport to represent both groups. The closest I've come in a case that's been identified in at least some of the papers, I think, is the Mago case from 2000, where, in fact, there are class members that don't get anything, and our court did not block the settlement because of that. Why isn't this covered by the Mago case? I think, well, it's certainly not covered by the Mago case. This case is distinguished. This is not a case that involves gradation of a counsel, what efforts he put in. This is an astounding, the facts in this case are astounding, and I know that that could be. Leave the adjectives out. I mean, we're trying to figure out if what, at the end of the day, you have a situation where some people get money and some people don't, if that's an insurmountable obstacle. I'll refer the court to F.E.R. 54. In this particular case, lead counsel disavowed his duty to the class members. There is not another case in the United States ever that has this fact, ever, because the clear duty of class counsel is to represent the absent class members. I am adrift in volumes of excerpts of records, so can you tell me what F.E.R. 54 is? I'll read it to you. This is lead counsel's... Excuse me. We do not talk during the oral argument. I'm sure you're very experienced lawyers, you all know that. And when you're talking out there, we can't hear what's going on up here, so please refrain or go outside. Thank you. This is lead counsel's final approval brief. These are the words of lead counsel. Lead counsel was appointed to represent the interests of purchasers in the 22 indirect purchaser state classes. Further, lead counsel, he has no duty to represent purchasers in any other state. That goes against the Rule 23-A-4. It goes against the specific language, and I can read the specific language of his appointment, that he is to represent all the class members, and it goes against Ortiz, Amchem, Hess, Radcliffe, every other case in the Ninth Circuit or anywhere else in the country. This is not gradation, did he do enough. Here we have a unique situation where lead counsel said, I don't have to do it, and that is not right. These people, the absent class members are dependent on lead counsel to represent their interests zealously. Zealously, not turn around and say, I don't have to represent them. It's also noteworthy that from the beginning, lead counsel purported to represent these absent class members that he suddenly in the final approval brief washes his hands of. Genesca complaint was the first complaint on file. Massachusetts filed by lead counsel before there was an MDL. That's ER 2201-34. The next one is the first amended complaint included Massachusetts, ER 2094-2093. Second amended complaint, 1748-853, involved a national class. A national class means a national class. A national class doesn't mean forget about these three states, forget about the rest. I'll include them in here because it looks good, and then at the end I'll say all I have to do is pay attention to these 22 states and forget about the rest. Absent class members in this case law are all over the place, are to rely on the ethical rules and the black letter law and the cases interpreting it that lead counsel zealously represents them. They can't be an appearance of a conflict. He has to hold them like a mother holding an infant, protect their interests, look out for the best that they can have. In Missouri, what did he do for Missouri? Although he claimed a national class, we can go through the fourth amended complaint, but it's more of the same, it was included until the final approval brief made clear he didn't represent them all the way along, he's not going to represent them now. What happened along the way? With Missouri, prior to the settlement for no economic recovery, claims were never asserted. That can be found at ER 726 to 727, Alioto declarations at paragraph 39 and 42. Plaintiff never named. Notably at ER 788 on March 6, 2012, there's evidence in the record that a Missouri class representative was brought to his attention. He didn't follow up. With regard to New Hampshire, New Hampshire was in lead counsel's pre-MDL complaint, ER 2201 to 304. It was also in 2243, the NASDAQ complaint, 2297, the Fogoni complaint. All the complaints, again, were advanced seeking a national nationwide class, which includes the omitted repeal of states. Once you include the omitted repeal of states, you can't decide that they're disfavored. You're all in or not. If he wanted to bring a 47 state, sorry. Excuse me. Would you please refrain from speaking or leave the courtroom? Would you agree to that? Counsel, I'm looking at you. I'm asking you to stop talking during oral argument or to leave the courtroom, okay? Thank you. All right. With regard to the efforts of the Massachusetts case, Chinesco was in, I already discussed what happened. He was just summarily dismissed with no notice to him. In came Ms. Caldwell. Ms. Caldwell was first dismissed because lead counsel didn't send out what's called the Massachusetts pre-suit 93A letter. I'm going to switch gears on you. Okay. Because there's something I want, and maybe somebody else is going to address it, something I want to focus on. The district court explained the reason for the different treatment in the end as being the people that weren't going to receive any money had no hope of receiving any money. Because at least at that point in time, they no longer had a viable claim. Why isn't that a justification for the plan of distribution? That is very hotly contested. That issue was not briefed. The district court said that it could not revive claims. There's also a question about that. That's something that will be raised when we go back to the district court. Beyond that. Well, I'm not sure. The point of MAGO, which is not on all fours, but the court in MAGO winds up saying, well, there's a category that's just not going to be able to collect. And so it winds up saying okay to the deal, even though some people walk away with nothing, because the court apparently concluded they're not going to get anything, and why isn't that the same true here? Because it's not conceded. It's absolutely not conceded that they won't get anything. In fact, we believe they will. Hasn't the CRT market largely died here? The CRT market. And so the argument is that the injunctive claims are valueless or moot. Well, we 1,000% disagree with that position. Okay, explain why, actually, because the district court did make a finding on that point. Yes. That's not my issue, but I will quickly hit it. In the first place, the defendants were placed on notice from word go. From pre-MDL complaints, they were put on notice of Massachusetts and New Hampshire. With regard to Missouri, they were put on notice through the filing of nationwide complaint at the nationwide complaint throughout. And so that bill, I believe, necessities will address that. I don't want to take a long time. If you need to switch people, this may be a good time to do it, because that's the issue we're now at. This is a concern. Okay, before I leave, one thing. Let's just make two points in the first place. How about if you leave and come back? Okay. John Cranford, before Ms. Estes, I'm going to go very quickly. There's much not to like about this settlement. I'm going to hit one thing hard. There's a 90-degree problem that cannot be swept under the rug. The claims that were released, rationalized by statute of limitations, doesn't work analytically. It's incoherent. And the reason is simple. It is one thing to say that a whole group of people claims are not barred, because the claims are brought within X years. But it is another thing to say on a wholesale basis that everyone's claim is barred, because there are highly individualized issues that are implicated in a statute of limitations analysis, issues relating to accrual and tolling. And Missouri, like basically every other state, has these principles. So for the court to say that everyone's claim is worthless is incoherent. We can't do that analysis. It's the reason why we don't allow 23B3 common law fraud claims. Every person is different. Well, that cuts way broad, because even if you didn't have the conflict of interest type claims here, within any class settlement, you've got the possibility of some individual popping up and saying, okay, my facts are sufficiently different that it shouldn't be covered. And you can't have a class action if you take that too far. What I'm saying is this, is that you cannot force someone in a representative action to release their claims for zero compensation and say they are bound when you do so based on statute of limitations. There are hyper-individualized issues. So explain to me how someone in Missouri would be entitled to an injunctive relief that would be worth value to them. What would it be? Actually, I was talking only about damages relief, because Missouri is a ____. Damages. Explain what the value given ____. Explain that specifically, concrete terms. What would they have that they don't have? Missouri is a state that is an Illinois repealer state by court construction of their Consumer Practices Act. That's why an LCD, and I wanted to correct the record. Actually, we do a lot of appeals and class actions. I did do an objection in the LCD case. I've done one. In that case, I'm quite aware that there was relief for the Missouri people, because the court ruled that the claims were sufficient. In fact, Mr. Aliotto was counsel in that case. I don't want to take any more time from Ms. Estes. She needs to go too, but I would like to make one final point before I step away, and that is that the Lodestar cross-check in this case was nothing but theater. It was a spot check of a small minority of cases, and all it revealed was that even the records that came out was that you had block billing, quarter hourly billing, and haphazard records. That's not enough to justify an upward departure from benchmark in a megafund case. Thank you, Your Honor. Good morning, Your Honor. Polly Estes on behalf of Rockhurst University. Hold the mic. Sorry, I'm short. I understand. Is that better? Okay. I'm Polly Estes. I'm representing Rockhurst University et al., and we have claimants from each of the three omitted repealer states. Let me try to start by answering Your Honor's questions that you've had so far. What would happen on remand? First of all, the district court should appoint separate counsel to represent these omitted repealer states. Secondly, that counsel would file a new amended consolidated complaint that would include claims of each of these omitted repealer states, and those claims would relate back to the filing of the original complaint. Secondly, you ask what should lead counsel have done? Excellent question. We are challenging not only the final order approving the settlement, but also the 2010 order approving the stipulation. And if Your Honors will read, Coby v. ARS National Services and Reynolds v. Beneficial National Bank, I think those two cases tell you what it is that both lead counsel and the district court should have done at the stage of the stipulation and at the stage of the settlement. So what should lead counsel have done? Well, first of all, he should have found a plaintiff for Missouri, as he in fact had promised. The question I posed, and I'd like to get an answer before the time runs out, is why can't the district court's decision that the people in those three states can properly be excluded from receiving any money be justified based on the distinction the court found with regard to they're not going to get any money anyway. It's too late for them. The only reason they're not going to get any money and the only reason that their claims have no value, whereas the other repealer states' claims do have value, is that lead counsel committed malpractice. Fine, they can sue him for malpractice. That doesn't really help us now. They can't for statute of limitations. Well, if they can't, then they can't. However. But that doesn't, now, hear me out here. It may be that those people can't properly be represented and can't be included within this settlement. I don't know what it is that makes the lead counsel go out and represent somebody he doesn't represent. You're saying he doesn't represent them, so he can't release their claims. That argument I hear. The argument that he's committed malpractice somehow and people would like to bring malpractice claims against him but can't because of limitations, period. That argument I don't hear. What I want to know is, why is the plan of distribution faulty when the court distinguishes between people that have claims that live today and people that don't have claims that live today? Okay. One minor distinction in what you said previously. I am not asserting that lead counsel did not represent the omitted repealer states. Well, for a period of time he purported to do so. And even now he purports to do so. Right up to the very end. No other counsel was ever appointed. So he maintained a fiduciary duty to those claimants. Well, yes and no. Because at a point in time, there are certified classes. And the certified classes don't appear to cover the three omitted states. Yes, and they sought class certification at the very end in conjunction with seeking a settlement. But let me go back to what I think is your ultimate question. Why was the district court wrong that these three states no longer had viable claims? The reason they no longer had viable claims was the 2010 stipulation,  We're hearing a phone in the room now. Come on, guys. Come on. Who's got the phone? The only reason the 2010 stipulation was ever entered was to cover up lead counsel's negligence in failing to properly plead claims on behalf of these three states. In that stipulation, if you read it, the omitted repealer states, I want to go hear this correctly, because properly plead claims, they never, he didn't, because that would go to me as something that was out of the state of representation from the outset, that he didn't, you're saying he didn't properly plead the claims. Yes, so for Missouri, As opposed to pursue them. Both. So for Missouri, he just simply never, ever pleaded any damages claims on behalf of that class in a consolidated amended complaint. For New Hampshire, he failed to take the complaint that had been filed and sent into this MDL and include it into the consolidated amended complaint. For Massachusetts, he did attempt to plead claims, but he failed twice to give the requisite 30-day notice, which the special master specifically instructed him he had to do. Explain to me your theory on why these claims are viable. They are viable because if this court reverses both the order approving the settlement and the order approving the stipulation, then a fifth amended complaint can be filed, which will relate back to the original complaint. Now, so, and the original complaint here would be for Massachusetts, which was included in the consolidated amended complaint, for New Hampshire, which had a complaint, which should have been, which was transferred into this MDL and made a part of this whole case, and for Missouri, because Missouri has always been a part of the nationwide class, and so claims have always been asserted on behalf of Missouri as well. I see that my time is up. If your honors have any other questions, I'm happy to answer them. Not at this time, perhaps after we hear from the other side. Okay, thank you very much. Good morning, your honors. Myron Moskovitz for the appellee here. The court reviews the settlement of a class action for abuse of discretion, and that means deference. That's the general rule. But there's some particular reasons why that rule applies with special force here. Six judges had a hand in this settlement. It began with Judge Legg, sitting as special master, handling many of the motions. Then Judge Conte, also sitting as special master, certified the class for trial.  Judge Fern Smith also helped craft the settlement. Then it goes to special master Martin Quinn, who approves the settlement agreement, and then finally it goes to Judge Tiger, who also approves Quinn's report and the settlement agreement. You've got six judges involved in this thing. These judges heard all the objections they're making now and rejected all of them, and they're asking you to find an abuse of discretion here. Now, these approvals by special master Quinn and Judge Tiger were not rubber stamps. Special master Quinn wrote a 77-page opinion. Yes, all of this is true, and it has absolutely no effect on me. Do I want to know? I mean, yes, of course. We're here, and this is how we got here. But I guess what I want to know is your view on whether or not the district court applied the wrong lingual standard by looking to the distribution and the amount and value of the settlement as opposed to whether every member of the class was adequately represented under Anne Shannon and that line of cases. The fundamental problem with all of their arguments of the objectors, they're claiming that lead counsel, Mr. Ali Odo, didn't adequately represent the consumers from the three repealer states, New Hampshire, Massachusetts, and Missouri. The fundamental problem is they had no representatives from those states. Now, Ms. Estes in her brief blames Mr. Ali Odo for this. She says it's easy to get these people. Well, I don't think she has much experience with actually litigating. For myself, I don't care that they may or may not have been able to go out and find somebody. My problem now is that we've got a settlement teed up that purports to release, that does release claims on behalf of people from those states without appearing to have any return to them and without appearing to have anybody at the table speaking for them. The fact that Mr. Ali Odo couldn't find somebody from Missouri, I accept that. Fine, that's probably the case. But then how is it that he releases their claims since he doesn't have anybody from Missouri that he seems to be looking after? I mean, a deal that says I'm giving away your claims over there and my people over here get money seems to have a piece missing, like those people over there. That would be troublesome if that's what happened. That's not what happened. This case began as a nationwide class action for an injunction under the Clayton Act against these price-fixing defendants on behalf of every indirect purchaser in the country. Now, you can get that under the Clayton Act. That covers all 50 states. The consumers in those three states were included in that class. And from that, Mr. Ali Odo tried in front of Judge Legge to have the people from those states represented to get the state damages. You can't get damages under the Clayton or Sherman Act under Illinois BRIC, but under the state law you can. And since he didn't have people from those states, he tried before Judge Legge, and he had some law to support him, but apparently there's a conflict. Judge Legge ruled against him. Now, the only thing left for Mr. Ali Odo to do in order to pursue those three-state damage claims is to get representatives from those states. Now, Mr. Ali Odo can't do that. He's licensed in California. He can't go to Massachusetts and hang out a sign and say, sign up for this case. He can't do that. And he can't do that in any of the... He can get local counsel to do it. Yeah, exactly. He depends on local counsel to do it. In 22 states, local counsel was cooperative. In Missouri, he got nobody. In those three states... Massachusetts seems like a very unlikely state where you wouldn't be able to get anyone. Well, I'll tell you what happened. He depended on people like Mr. Bonsignori to get people for him. And Mr. Bonsignori, a few minutes ago, said, I did that. I got plaintiffs from Massachusetts. Well, here's what Special Master Quinn found on that on page 40. Bonsignori claims that his client, Gianosca, was truly vetted and ready to serve as a representative plaintiff. Mr. Ali Odo swears he never refused to add a viable plaintiff to this case and this just didn't happen. Special Master Quinn says, having reviewed the documents, claiming to show that Mr. Bonsignori proffered a viable plaintiff, the Special Master concludes that Mr. Ali Odo's version of facts is more credible. So there's no class representative from Massachusetts? Pardon me? So there's no class representative from Massachusetts? There's no one from any of these three states. So how does Mr. Ali Odo purport to represent people from Massachusetts in extinguishing and releasing their claims? Because he represented them as members of the nationwide class for the injunction. All right? And then they get to... Which nobody seems to be much concerned about today. We're talking about money. And the people in Massachusetts are being told that your claims are being released, including whatever claims you might have for money, even though I didn't get you any money. And I didn't have any plaintiff as a class representative looking out after your particular interests. How can that be? They go into settlement negotiations with Mr. Ali Odo representing every consumer in the country because of that nationwide claim for an injunction. The defendants, naturally, as they always do... That's inadequate because he couldn't represent their claim for damages and yet he was purporting to release it. Their claims were dead. That's interesting. I realize that the court made that finding, but he's saying the argument is that you didn't litigate to ensure their viability. The statute of limitations had run on all of those claims. But at the beginning? Did you go back and litigate the viability of their claims? I'm sorry, I didn't get there, Your Honor. Were they dead when they were named in the complaint? No. What happened while Mr. Ali Odo was representing them that their claims were alive and then died? The only claim they had in the beginning was for the nationwide injunction. They had no claims in the beginning for the damages under those state laws. Well, Mr. Ali Odo tried to get those, but Judge Legg said you can't do that. Wait, I thought originally they did have a claim for damages. They what? They did have a claim for damages. Theoretically, but there were no representatives there. Well, wait a second. That's a different issue. No, it's not. Judge Legg said if you want to have a claim for damages in those three states, you've got to have representatives. Mr. Ali Odo didn't have the representatives. He depended on people like Ms. Moore, like Bonsignore to get them. They didn't get them, okay? Mr. Ali Odo, what Quinn said was this is an extraordinary achievement. He got 22 out of 25, all right? He organized the whole thing. Most lawyers in these other states were cooperative. Once Mr. Ali Odo was designated to lead counsel, they cooperate. They give him, they either sue and then have it consolidated or they just give him to Mr. Ali Odo and it goes ahead and you get an enormous settlement out of it. But Bonsignore didn't cooperate. Moore didn't cooperate. And what can he do? He's not admitted in Massachusetts. And just for myself, I don't care about any of that. My problem is at the end of the day, he strikes a deal that affects the claims of people from those states without a class representative from those states. Now, if you tell me, well, you can't pursue damages for them, then I have to ask the question, what gives him the right to release their damaged claims? Judge Clifton, earlier you cited the MAGO case. In MAGO, the court said that the distribution does not have to be equal among all the claimants. It depends on the value of their claims. And if you look towards the end of that discussion, the court says were we to decertify the current class, it is possible that no one will recover anything from MAGO. Now, that's exactly the situation here. Well, the reason for some people not collecting in MAGO had to do with the adoption of the Private Securities Litigation Reform Act. And here the reason being given is the statute of limitations, which objectors are busy saying, look, we've got lots of ways to try to finesse that. I don't know whether they're going to be successful or not, but they have a different point of view, and so you start to ask yourself. I understand the practicality of settlement. I've practiced law for a long time. I know defendants want complete peace, but you can't always get what you want. And in this case, who's at the table looking out for the people from Massachusetts and New Hampshire and Missouri? Nobody. And it becomes easy to do a deal that gives the nobody there people nothing, which seems to be what happened here. Now, it may be correct that those people can't collect anything, but why is it that they have to suffer that risk and we're supposed to make that decision? Number one, they're not suffering anything. The case is gone. The statute of limitations argument, they're trying to rebut saying there's relation back, there's tolling. You can't do any of that. And maybe we should ask defendants to bear that risk by saying, don't get a release for those states, but don't worry, you've got no problem because the limitations period is run. Your Honor, if you write an opinion that says something like that. That would be very Solomonic, I think. I think the court should be wary of weaponizing objectors and allowing them to upset these settlements. Wait a minute. What sacrosanct about a settlement where you and I strike a deal that makes him over there suffer? We don't have the right to speak for him. And I don't want to kill settlements, but people only have the power to speak for themselves. And in this case, I don't see anybody at the table speaking for the people from Massachusetts and New Hampshire and Missouri. I hear defendants wanting complete peace. Will they pay any more for those? I doubt it. Will the plaintiff class have to share more money to more places? Maybe so. And if they're not willing to, then why are we allowed to say that the people in, I think, Hawaii is a repeater state. So why should people from Hawaii be able to say, we get a little bit more because people from Massachusetts, like Judge Katzmann was and probably was during the class period, he doesn't get anything. If some of this settlement had been allocated to consumers from these states, you'd have a different set of objectors up here. The objectors from the other states saying, why are you giving them money? We've got all these judges finding their claims are worthless, and you're giving them a piece of action for, what, nuisance value? No. Their claims are a – Sometimes, counsel, sometimes cases are – I mean, I did this very type of litigation for many, many, many years, and sometimes there is nuisance value settlement. Well, Your Honor, League Counsel did have authority to represent these people as part of the nationwide class. Then they go to negotiate. Defendants want global peace. They want, even though the claims of those people in those three states are worthless, they still want a sign-off that they won't get any nuisance suits. Why should they get it? If they're not willing to pay any more, why should they get what they want if, in fact, nobody appears to be looking out after the interests of those three states? I don't think that's accurate. Mr. Alioto was looking out for their interests. He tried to, in front of Judge Legate, to – I'm sorry? Struck a deal that gave them nothing. Because by that time, their claims were worthless because the local counsel in those states did not produce any class representatives. Judge Legate said that's what you've got to do, and he couldn't. If you theorize if they had somebody come in today, they could try to make their complaint covering them relate back. I'm not going to opine on whether that's possible, but how is it we can adjudicate that argument? Well, the proof of the pudding that that's not going to happen is they didn't do it. Mr. Bonsignore claims to have a client who's objecting. At any time, he could have brought that client to Mr. Alioto and said, join them. He didn't do it. Same thing with Vince Moore. Bring them in. He would have been delighted to join them because that would have increased the size of the settlement, increased his attorney's fees. It would have been wonderful. If it increased the size of the settlement, then you're telling me defendants are going to be willing to pay more for those states, which is kind of contradictory to your argument. No, I'm saying if they were worth anything. Early on, they were worth something before the statute of limitations ran. If they had brought people to him before it ran, he would have been delighted to add them. I don't think we have enough in front of us on the statute of limitations, but why, if they had a claim and it wasn't barred by the statute of limitations when the complaint was filed, why didn't the filing of the complaint tell the statute of limitations? Well, it would have if those people had stayed in the case, but some dropped out and by the time the Fourth Amendment complaint was filed, by the time of the settlement, they were out. They would have told if they had stayed in the case. Because they would have had a viable claim. They would have, but it was too late. The key here is there's no plaintiffs from those states because the objectors didn't produce them. I mean, they're talking about relation back and everything. There was no motion to amend the Fourth Amendment complaint to add them. I want to respond to the question that came up a couple of times about what happens if you reverse and disapprove of this settlement. This settlement is over half a billion dollars, cash. No coupons, no vouchers, no CPRA, no discounts, money in the bank. And the money is in the bank. At this point, all of the defendants have paid the money into escrow. Now, the terms of the settlement agreement, if the settlement agreement is undone, that money goes back to the defendants. It's out of the bank. It goes back to them. Can I ask you something, counsel? How much is this influenced by the award of attorney's fees and costs? I'm sorry. How much of this is actually really influenced or affected or the pragmatics of undoing this influenced by the award of attorney's fees and costs, which was substantial? That entire fund is in jeopardy if the money goes back to the defendants. Perhaps some of the money that goes to attorney's fees might end up going to Missouri, New Hampshire, and Massachusetts. Well, yeah, but let's not forget about the consumers in the 22 other states. Right now, they have filed something like 150,000 claims that would gobble up that entire half a billion dollars. If the settlement is disapproved, it goes back to the defendants. Is the half billion earning interest right now? Pardon me? Is the half billion earning interest in the bank right now? It's getting interest. They put it in CDs or something. So it's growing. Yeah, but the money may never come back, all right? Toshiba, one of the defendants, has been in financial trouble. Samsung, who contributed the largest chunk, was something like four months late in putting it in. There's a very volatile industry. If this case goes to trial and there's a judgment of a similar amount, there's no assurance they're going to get that money. So these are all good reasons why we should tave the people of Massachusetts and the other states too bad. Well, I understand the practicality, but I've still got a problem with three states being left out for reasons that may be legally valid with regard to a limitations period defense. Actually, it's not 23 states. It's 25 states. You left out Texas. You left out Florida. You left out Pennsylvania. Those people don't get anything either. That's right. I'm willing to accept that, and there doesn't seem to be a serious challenge, that if you're from a non-repealer state, you're kind of stuck when it comes to money. So are these three states. So that's a mega kind of distinction. You're offering up a limitations period kind of distinction, and I'm not sure that's quite as solid as the difference between Texas and whoever else is a repealer state. It's the same thing. No, it's the same thing. But if you want it that way, we can say fine. You've left out not just three states, but 28. I'm not sure that makes your argument any stronger. Those people in Texas were represented by Mr. Aliotto in the injunction action. All right? In the settlement, they get zero. Why? Well, as you know, that's a non-repealer state. Their claims are worthless, so they get nothing. At this point in time, and at the point of this time in the settlement, that's exactly the same thing with Massachusetts, New Hampshire, and Missouri. Why? Because you say so. No. Well, Special Master Quinn said so. Judge Tiger said so. And the law says so. The law says that the statute of limitations has run on these. Now, there's no motion to amend to add any representatives from there. What they're doing is sort of conceding that, but they're blaming Mr. Aliotto. They're saying inadequate representation. He should have done more to get representatives from those states. He couldn't do any more. He's not licensed in those states. He has to depend on people like Mr. Bonsignori. I mean, look at his address on his brief. He's in Massachusetts. Mr. Aliotto isn't. He's not licensed in 25 states. I'm not either. Most lawyers aren't. He depended on people like the lawyers in the 22 states to come up with people, and he succeeded. It was a tremendous achievement. But in these three states, it didn't happen, and these people didn't help at all. So at this point in time, Massachusetts equals Texas. They're worthless. And he did nothing wrong in signing a settlement agreement and gave up their worthless claims. Can I ask, again, returning to the earlier part of your discussion, and this may be repeating what you've said already, but I'm just trying to get this in my own head. Okay. Did anyone in the settlement and distribution negotiations, and this goes to your colloquy with my colleagues, have incentive to advocate for the position that the injunctive claims possessed by class members who are not eligible for monetary compensation because they are from states that do not allow for the super damages? I'm sorry.  Did anyone in the settlement and distribution negotiations have incentive to advocate for the position that the injunctive claims possessed by class members who are not eligible for monetary compensation because they are from states that do not allow super damages here actually have some value? How does that speak to, again, to the adequacy under Rule 23? One of the most difficult tasks for lead counsel in a case like this where you have varying claims, particularly in varying states, is to come up with something that's fair. And he gets input from all the lawyers for the people in the various states. He makes the best judgment he can. It's messy. I mean, it's bound to be imperfect, and some people are going to be unhappy. But what he worked out, people were relatively happy for. So what is the incentive? Pardon me? What is the incentive? What is the incentive with respect to those who are not eligible for monetary compensation? The incentive during the settlement negotiations, not earlier. Right. His duty to be fair to everybody. That's the incentive. But when he sees some claims are worthless, what's he supposed to do? You know, tell these lawyers from these other states, your people get less because there's some nuisance value to a Massachusetts lawsuit. That didn't seem fair to him or to Special Master Quinn or to Judge Tiger. That just didn't seem fair. So it's inevitable. There's a class action with all kinds of people with different claims. What they worked out is they didn't break it up by states. One of their objections in the trial court was, oh, this state ought to get more than that state. No, none of that. Everybody gets the same, minimum $25 and then traveling and your actual damages. And everybody thought that was relatively fair. But it's always going to be imperfect. I mean, this is a huge undertaking. But, I mean, you know, they want to nitpick every little thing. This doesn't sound like a legal argument. Pardon me? This isn't sounding like legal argument. Do you have any further actual legal arguments? I don't want to – this is your life. You do class actions for a living. Yeah, the cases we cited, the Mago case, the Wynn case, there was another case where all nine circuit cases say, along with Mago, that these things are imperfect. You take into account the value of the claims. And if a claim is worthless or not worth as much, the district court judge has the discretion to approve a plan of allocation that gives them less. Now, keep in mind that Judge Tiger dealt with this whole issue we're talking about, not in terms of whether the settlement should be approved. He and Quinn lauded the settlement. It was a terrific settlement. It came up only with the plan of allocation. And I would suggest that you treat it the same way. If you have a problem with this, I hope you don't, don't undo this settlement and have all that money go back so the class never sees it again. If you have a problem with the allocation, at least we'll keep the money in the bank. Defendants have no interest in the allocation among the class members. How do you do that legally? Pardon me? How do you do that legally uphold? How can you say that there wasn't adequacy of representation to still uphold the settlement and order of redistribution? Well, I don't think that's difficult. You just used the words you used a few minutes ago, that this half a billion dollars was unfairly distributed all to the 22 states, and some of it should go to the three states. That's an allocation question. I hope you don't do that. But I think that's the way to handle this rather than undo this settlement, which it would truly be a disaster for the class. Well, then perhaps maybe the party could wish that and we wouldn't have to if you were to mediate this or something, if that's what you think the correct solution is. That could happen. I mean, there could be a settlement. Oh, you mean on the allocation? Yeah, that could happen. They could come to an agreement. But I would caution you that what I said earlier about giving objectors weapons to undo class settlements is very dangerous. It means, you know, they can get money. I would submit to you that the only problem was created by the people who settled. Well, Special Master Quinn, Judge Tiger, looked at this carefully and found that Mr. Aleuto behaved properly, that he did his best to try to get representation for those three states and it just didn't work out in this case. But he still represented those people because of the nationwide injunction that he was seeking. So legally, it was all fine. I mean, their accusation comes down to one thing. Mr. Aleuto had a conflict, which he didn't. His interests were aligned with these three states. He would love to have gotten representatives from those three states. He'd get more money, all right? And then they say he was incompetent because he didn't go out and get clients from those states. All right, counsel. Now you're just repeating yourself. So anything further you want to sum up? No. The defense counsel has a few comments. Yes, I can imagine. Thank you. It may have pleased the court. I realize I don't have a lot of time. As counsel for defendants, I'd really like to make just one critical point. Regardless of how this court resolves the question about the fairness of the distribution plan, and we think it was fair, but regardless of that, there is no basis to disturb the settlement agreement. They are two separate documents. And as this court has recognized in the Mego case, questions about fairness of the settlement agreement and questions about the fairness of the distribution plan are two separate inquiries. Under the terms of the settlement agreements here, defendants paid a single lump sum of almost half a billion dollars, which indistinguishably covers the nationwide class and all state classes. The settlement agreement makes no judgment about the relative value of any claims, whether asserted or unasserted. You don't care how the money is divided. We don't care how the money is divided. If you're complete peace, you're happy. That's right. And I would point this court to the Third Circuit's decision in the In Re. Pet Foods product liability litigation, that's 629F3D333 at 346 to 349 and 358. It's a 2010 decision. There, the Third Circuit approved the release that was contained in the settlement agreement and only remanded for a determination as to whether allocation of settlement funds to certain class members was fair, reasonable, and adequate. There's nothing that precludes this court from doing the same thing here. If I may, I'd like to address a couple of the questions that the court had, if this court will permit me a little bit more time. Thank you. With respect to the question of valueless claims, whether as a matter of overall fairness or whether as a matter of settlement agreements, valueless claims do not need to be compensated in all instances. There is no rule that requires that. I would point this court to the Nguyen view. No, that's true. The problem, I think, at some point was these were viable claims and would have been told and would have lived had there been adequacy of representation. The statute of limitations actually ran on each of these claims a long time ago. The Missouri claim was never brought. Copy litigation? We're pre-filing this complaint? The Missouri... I mean, the council said they filed claims on behalf of them. They just couldn't maintain them. There were never claims filed on behalf of Missouri. There were no Missouri state law damages claims filed. So the statute of limitations on Missouri would have run in, it's a five-year statute of limitations as far as I'm aware, so that would have run in November of 2012. So we're really talking ancient history. Now, this notion of relation back... Maybe your client has nothing to worry about and doesn't need a release from damaged claims for people from Missouri. So on the subject of global releases, which are important to incentivize defendants to enter into class settlements of this magnitude, this circuit has found that a federal court may release not only those claims that are alleged in the complaint, but also a claim based on the identical factual predicate, and I'm quoting, as that underlying the claims in the settled class action, even though the claim was not presented and might not have even been presentable in the class action. Global releases are exceedingly common. They incentivize class settlements. That's what happened here. Well, but they're possible. It doesn't say that it's appropriate in any particular case. And if you're willing to say they've got no viable claim, there's nothing to worry about, then maybe we should let your clients be the ones that decide there's nothing to worry about. Why should we adjudicate for the people in those states that you don't have a viable claim, nobody brought it, but we're going to pretend that it's been adjudicated? If you're so confident, you can tell your clients not to worry. They don't have any viable claims, so we can excise those states from the release. But of course you're not going to do that, and your clients aren't going to agree to that. So why is it that the people in Massachusetts are the ones that take it in the shorts? A global release does not convert otherwise valueless claims into valuable ones. But the premise is that the claims are valueless, and you're not willing to take the risk that that's not right. And so why should anybody else be expected to take the risk that that's not right? Well, I guess in this case it goes back to where I started, which is that the settlement agreement, the money that we paid, doesn't make any distinction between the value of claims, whether they're valueless, whether they're not valueless. We paid one single lump sum. Correct, but if the risks were zero, as you're assuring us that it is, then your clients can solve the problem as well by deciding, fine, there's no risk, so we'll take it. But they won't do that. We didn't do that. We didn't do that in this case. And if we have this mediation, I suspect that question could be put to your clients, only I wouldn't expect to actually put it if I were the mediator, because it's absurd. Defendants are paying for a global release. But that doesn't explain to me why we should accept the argument that there's no risk here if, in fact, nobody else is willing to step up and take it. But then it's a question of distribution, and that leaves me where I began, that really, to the extent that this needs to be resolved. Do you also agree that this is potentially something you could mediate? Theoretically. All right. Thank you, counsel. I'll give you two minutes. Tell us you've reached an agreement that will be worth our while. First off, I think in many of these questions, they keep going back to, by the time of the settlement, the claims had no value. Well, let's look at why the claims had no value. We maintain that they still would have. But if they had no value, the only reason is because in 2010, entered into a stipulation which got none of his clients anything. No client benefited from that stipulation. The only person who benefited from that stipulation was lead counsel because it enabled him to hide his malpractice and start the clock ticking on the one-year claim for malpractice. That stipulation was essentially the first part of the settlement because in the stipulation, he agreed that he would no longer bring any claims, any new claims for any new party, any new plaintiff, or any new legal claims. So he gave up all of the claims in the omitted repealer states at that time. And in exchange for it, we got nothing. Absolutely nothing. Now, very important, at the time of the stipulation in 2010, the statute of limitations had not run on any of these states. So he claims he can sit back and wait for others to do his job and bring him a plaintiff. Well, even if that had happened, the day after the stipulation, he'd given up their claims. He had given up perfectly good claims, which is why we are seeking a reversal of the order approving the stipulation, and which is why in Reynolds... Do you want the approval of the settlement reversed? Do you want to participate in the settlement? Yes, because the settlement itself, at the end of the day, gives up all of the claims, both damages and injunctive relief, of the three omitted repealer states in exchange for nothing, and we think that is in direct violation of COBE. And let me just say, in their brief... Hold on. Refocus your attention on the question Judge Warbaugh just asked. Do you really want this settlement to go away, or are you focused as well on the plan of allocation that defendants are desperately trying to put it on the table by itself? What I really want is for this case to settle and for us to be able to participate equally in the $577 million allocation. Well, it sounds like your side of the room might be amenable to staying if a resolution can be reached as well. Absolutely. Absolutely. Let me just say that back in the trial court, the defendants offered to tweak the settlement allocation, and it was League Counsel who refused, and that is in G&S's ER 554 at 133 lines 10 to 14. And finally, he keeps talking about, well, he couldn't go out and find a plaintiff in states where he's not licensed. First of all, we know that's not true because he already had. That's a tangent. Yeah, well, you can be done. I think we're finished with our minutes of brief today. Thank you very much. So thank you very much, counsel. This case, indirect purchaser plaintiffs versus defendants, is submitted, and this session of the court is adjourned for today.
judges: Wardlaw, Clifton, Katzmann